UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY MARIE ALLEN,

        Plaintiff,                      Civil Action No. 10-cv-10862

    v.                                 District Judge Julian Able Cook
                                        Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 13]**

**I. RECOMMENDATION**

Plaintiff Kelly Marie Allen ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Both parties filed summary judgment motions (Dkts. 10, 13) which are referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkts. 3,14.) For the reasons set forth below, the Court finds that the Commissioner's determination that Plaintiff is not disabled is supported by substantial evidence. Accordingly, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## II.  REPORT

### A.  Procedural History

Plaintiff filed this suit on March 3, 2010, stating she protectively filed applications for SSI and DIB benefits for an alleged disability beginning on January 1, 2000. (Dkt. 1, Pl's Compl.) The Commissioner initially disapproved her claim on March 21, 2007. (Tr. 66-70.) Plaintiff then filed a timely request for a hearing, and on May 11, 2009, Administrative Law Judge ("ALJ") Elliot Bunce held a video hearing. (Tr. 46-63.) Plaintiff was represented by counsel at the hearing. (Tr. 46.) In a decision dated June 20, 2009, the ALJ found that Plaintiff was not disabled. (Tr. 13-20.) The ALJ's decision became the final decision of the Commissioner on December 30, 2009, when the Appeals Council denied Plaintiff's request for review. (Tr. 1.)

### B.  Background

Plaintiff was 22 years old at the time of the ALJ's decision. (Tr. 22.) Her alleged disability began before she attained the age of 22. (Tr. 15). She has a high school education and seventy-nine credits towards a Bachelors Degree in Graphic Design at Saginaw Valley State. (Tr. 22.) Plaintiff has no past relevant work. (Tr. 19.)

#### *1. Plaintiff's Testimony*

At the hearing before the ALJ, Plaintiff recounted symptoms and limitations related to her epilepsy. (Tr. 56-63.) Plaintiff testified that she experiences one or two seizures in a "good week," and "maybe four" in a "bad week." (Tr. 56.) In addition, about once a month, she experiences seizures wherein she will have six seizures in one day. (Tr. 56-7.) When that occurs, she also gets "really sick," and has to miss class. (Tr. 56-7.) Prior to the onset of a seizure, she experiences an

2

"aura," wherein her hearing is amplified or muffled. (Tr. 59.) This is the primary way she determines that a seizure is about to occur. (Tr. 59.) During the seizures, she will "blank out for a few minutes," but typically does not lose consciousness or fall down. (Tr. 56.) After the seizures, she experiences fatigue and depression. (Tr. 58.) She does not have a driver's license due to these seizures. (Tr. 58.) Additionally, she currently takes Tegretol, Keppra, Topamax, and Lamictal for her seizures. (Tr. 56.) She has not been hospitalized for any reason in several years (*Id.*)

  *2. Medical Evidence*

Plaintiff's medical records come from two main sources – Neurosurgeon Dr. Konstantin Elisevich, M.D. and Epileptologist Dr. Brien Smith, M.D.

Plaintiff began having seizures in May of 2000, while on an eighth-grade school trip to Cincinnati. (Tr. 222.) She has had seizures ever since. (Tr. 222.)

Plaintiff started seeing Dr. Brien Smith on or about May 1, 2003. (Tr. 222.) At that appointment, she reported to Dr. Smith that her seizures start with amplified hearing (an "aura"). (Tr. 222.) Her mother also reported that Plaintiff stares and repeats words, such as "what, what" with these events. (Tr. 223.) "Afterwards she feels sick to her stomach and she may vomit even in some cases." (Tr. 223.)

Plaintiff was admitted to Henry Ford Hospital on July 27, 2004, at which time her seizures were monitored by Dr. Jules Constantinou. (Tr. 196.) In the discharge summary, Dr. Constantinou wrote: "During this admission, [a]t least 30 partial seizures were recorded over [a] 7 day period of monitoring. About 20 of these, many of which were clinically silent, occurred on the fifth day of monitoring." (Tr. 196.)

Plaintiff visited Dr. Smith again on February 15, 2005 for a conference with several doctors.

(Tr. 185-86.) The doctors discussed Plaintiff's previous admission in July of 2004, and the possibility of a "right hemispheric implant." (Tr. 185-86.)

Plaintiff had such an implant – a "craniectomy for implantation of neurostimulator electrodes" – in July of 2005. (Tr. 190.) At that time, she was admitted to Henry Ford Hospital for an entire month. (Tr. 190.) Doctors monitored her for the entire month, and performed several operations to move electrodes:

> After prolonged EMU monitoring, her seizures were found to be right hemispheric in origin, possibly arising from the right insula. She was taken back to the OR for implant of depth electrodes. Another period of EMU monitoring revealed seizures, but they did not localize to our satisfaction. She was taken back to the OR for removal of electrodes. Post-operatively, she did well and remained neurologically intact with normal strength, orientation and visual fields. . . . She was discharged in stable condition.

(Tr. 190.)

Upon discharge, Plaintiff had the following restrictions: "No strenuous activity or lifting, greater than 10-15 lbs. *For 4-6 weeks*. No driving. We encourage walking to your tolerance." (Tr. 191 (emphasis added)).

Plaintiff recovered well from her surgery. (Tr. 218.) Dr. Smith indicated that "since her discharge from the hospital she has had no complex partial seizures or partial seizures with secondary generalization. She continues to have some auras of a weird feeling or hearing." (Tr. 218). At that time, she denied being in any pain. (Tr. 218.)

Dr. Smith examined Plaintiff again in June of 2006. (Tr. 216.) At that time he indicated that an "epileptigenic focus" was not identified during Plaintiff's hospitalization. (Tr. 216.) In other words, the doctors failed to find the source of Plaintiff's seizures. (Tr. 216.) Dr. Smith dictated: "This was obviously a disappointing experience in light of her seizure frequency and the attempts

to find the source and have it removed." (Tr. 216.)

It appears that Plaintiff did not see Dr. Smith again until November 2007. (Tr. 471.) At that time, she reported that she continues to have seizures once a week or once every other week. (Tr. 471.) Dr. Smith specifically noted some of the stressors in Plaintiff's life:

> Her mother comes with her to this visit, and she looked different, and I questioned how she was doing, and she told me of a very complicated hospitalization where she had secondary morbidity from problems that occurred with the surgery. . . . . Besides her mother being hospitalized after the complicated hysterectomy, her mother additionally had a stroke and then started having seizures. Her father also died in October. She has been through significant stressors in her life. She denies being in pain right now.

(Tr. 471.)

Plaintiff did not submit any more medical documentation to the ALJ.

### 3. *Vocational Expert's Testimony*

Vocational Expert Judith Findora testified regarding the existence of jobs for Plaintiff. (Tr. 60-61.) Specifically, the ALJ asked VE Findora a hypothetical question regarding the existence of jobs in the national economy for a person of Plaintiff's age, education, lack of work experience and physical restrictions:

> I'd ask you to consider an individual of the claimant's age and education; who has no relevant work history; who's able to perform work at the light exertional level that consists of no more than simple, routine, repetitious tasks with one- or two-step instructions; and that does not expose the worker to hazards, including heights, dangerous machinery, or driving. Would there be any unskilled entry-level occupations that a person with this profile could perform? And, if so, would you tell us what they are?

(Tr. 60-61.)

The VE responded that such a person could perform work as a housekeeper, cashier, general office clerk, and in an administrative support role. (Tr. 61.) The VE stated that these jobs are

available in the following numbers nationally: 424,700 housekeeper positions; 1,776,000 cashier positions; 300,000 office clerk positions; and 150,000 administrative support positions. (Tr. 61.)

Plaintiff's attorney questioned the VE on whether the need for time to "lie down at unpredicted times" during the work day would be "work-preclusive." (Tr. 62.) The VE stated that it would depend on the amount of unpredicted time needed:

> Generally, if it's a few minutes no more than once per hour, it can be accommodated; but if we're talking five, 10 minutes more than once or twice during the day in addition to regularly scheduled time-off, then it is work-preclusive.

(Tr. 62.)

### C. Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status), and Supplemental Security Income (for poverty stricken adults and children who become disabled) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits

are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The Administrative Law Judge's Findings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2000, the alleged onset date. (Tr. 15.)

At step two, the ALJ determined that Plaintiff had the severe impairment of "seizures." (Tr. 15.)

At step three, however, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments" in the applicable regulations. (Tr. 15.)

The ALJ assessed the Plaintiff's seizures by the criteria of Listings 11.02 and 11.03 for epilepsy and found that the "medical evidence does not meet the level of severity required by either

of these listings." (Tr. 16.) More specifically, the ALJ stated: "The claimant, through counsel, has only provided medical records through 2006, and these records do not indicate that her seizures occur with a frequency which meets the above listings." (Tr. 16.) In addition, the ALJ pointed out that Listing 11.00(A) and SSR 87-6 state that an individual will only meet Listings 11.02 and 11.03 if the individual continues to have seizures when following prescribed treatment. (Tr. 16.) In Plaintiff's case, she did not have seizures with the requisite frequency when following prescribed treatment. (Tr. 16.)

Between steps three and four, the ALJ determined that the Plaintiff has the residual functional capacity to perform light work that does not require "exposure to hazards such as heights, dangerous machinery, and driving." (Tr. 17.) In making this finding, the ALJ found the Plaintiff's testimony regarding her symptoms credible, but not her testimony regarding "the intensity, persistence and limiting effects of these symptoms." (Tr. 18.) In addition, the ALJ noted that Plaintiff only submitted treatment records through June of 2006, and, "in June 2006, the claimant indicated she only had seizures in November 2005 and February 2006." (Tr. 18.) The ALJ found Plaintiff's statements to her treating physician more persuasive than her testimony at the hearing. (Tr. 18.) In addition, the ALJ noted that Plaintiff graduated high school, and attended college notwithstanding her seizures. (Tr. 18.)

Regarding step four, the ALJ concluded that Plaintiff had no past relevant work. (Tr. 19.)

At step five, the ALJ concluded that given Plaintiff's age, education, work experience and residual functional capacity, there were jobs in the national economy that Plaintiff could perform, such as: housekeeper, cashier, and general office clerk/administrative support. (Tr. 20.) Therefore, the ALJ concluded that Plaintiff was not disabled. (Tr. 20.)

### E. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal

quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

### F. Analysis

In her Motion for Summary Judgment, Plaintiff contends that the ALJ erred by questioning the Vocational Expert with an inaccurate hypothetical. (Dkt. 10, Pl.'s Mot. Summ. J. at 6.) Plaintiff claims that the ALJ erred in discounting both Plaintiff's testimony and the testimony of her family members in forming the hypothetical. (Dkt. 10, Pl.'s Mot. Summ. J. at 6, 11.)

The Sixth Circuit states that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Varley v. Sec'y of Health & Human Servs*, 820 F.2d 777, 779 (6th Cir. 1987) (internal citations omitted); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004). Moreover, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987).

As stated above, the ALJ's hypothetical asked:

> I'd ask you to consider an individual of the claimant's age and education; who has no relevant work history; who's able to perform work at the light exertional level that consists of no more than simple, routine, repetitious tasks with one-or two-step instructions; and that

>does not expose the worker to hazards, including heights, dangerous machinery, or driving. Would there be any unskilled entry-level occupations that a person with this profile could perform? And, if so, would you tell us what they are?

(Tr. 60-61.)

Substantial evidence supports the ALJ's omission of both Plaintiff's testimony regarding the frequency and intensity of her symptoms, and the letters from her family members regarding the same. Indeed, the ALJ gave proper weight to Plaintiff and her lay-witnesses per SSR 96-7p.

Regarding an individual's credibility, SSR 96-7p states:

>[T]he adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding of credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."

Moreover, SSR 96-7p contains a procedural requirement that requires the ALJ's decision to list "specific reasons" for his credibility determination in his decision:

>The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

An ALJ's findings regarding the credibility of an applicant are to be accorded great weight and deference, particularly since only the ALJ is charged with the duty of observing a witness's demeanor. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the

opportunity, which we do not, of observing a witness's demeanor while testifying.") (citations omitted).

*1. The ALJ Properly Credited Plaintiff's Testimony*

The ALJ followed the mandate provided by SSR 96-7p and the case law regarding hypotheticals. The ALJ considered the entire case record in determining first, whether Plaintiff had an underlying medically determinable impairment; and second, whether the impairment could "reasonably be expected to produce the claimant's pain or other symptoms:"

> After careful consideration of the evidence, I find that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . .

(Tr. 18.)

The ALJ gave two explicit reasons for discounting Plaintiff's testimony: 1) the medical treatment records after Plaintiff's craniectomy "[did] not show that the claimant [had] seizures which occur[ed] as frequently as her testimony suggest[ed];" and 2) the objective medical evidence on the record [did] not substantiate her testimony regarding the limiting effects of her symptoms  (Tr. 18.)

Specifically, in October 2005, Plaintiff told Dr. Konstantin that she had experienced no seizures since her hospitalization in August 2005. (Tr. 18, 179.)  Moreover, in June 2006, Plaintiff told Dr. Smith that she only had seizures in November 2005 and February 2006. (Tr. 18, 216.) The ALJ found these statements to Plaintiff's treating physicians "much more persuasive in establishing the frequency of her seizures than the general statements made at the hearing or in her disability application materials." (Tr. 18.)

In addition to analyzing the objective medical evidence, the ALJ also considered the evidence of Plaintiff's activities of daily living and reasonably concluded that they did not support the degree

of restriction alleged. Plaintiff completed high school with a regular curriculum despite her seizures, and progressed to college to study art in June 2006. (Tr. 18, 216.) She lived on campus with three other roommates in an apartment setting, and was able to walk a fairly long distance to class. (Tr. 216.) In November 2006, Plaintiff reported that her activities of daily living included dressing herself, taking medications, preparing simple meals, attending class for a few hours each day, doing homework, dining out, performing most household chores, going out to movies, and doing art as a hobby. (Tr. 140, 144.) One of Plaintiff's roommates reported that Plaintiff regularly walked from the dormitory to classes, shopped for school items, clothes, and groceries, and visited her mother. (Tr. 128-32.) Therefore, the ALJ properly followed the mandates of SSR 96-7p with regard to Plaintiff's testimony.[1]

*2. The ALJ Properly Credited Plaintiff's Family Member's Letters*

Plaintiff submitted letters from her older brother, grandmother, and mother to the ALJ after her hearing. (Tr. 170-72.) The letters were dated April 29, 2009, May 5, 2009 and May 7, 2009 respectively, and describe the alleged frequency of Plaintiff's seizures. (Tr. 170-72.) Plaintiff's brother stated: "At most, she has 2-3 seizures within 2 weeks, as far as I know." (Tr. 170.) Plaintiff's mother stated: "Kelly experiences seizures on average about 3 or 4 times a month, although sometimes it is more." (Tr. 172.)

The ALJ followed the mandate provided by SSR 96-7p with regard to these statements provided by Plaintiff's family members. The ALJ gave four primary reasons for discounting this

---

[1] In her brief, Plaintiff also contends that the ALJ erred in failing to properly analyze her assertions of disabling pain. The record reveals, however, that Plaintiff's disability claim pertains to limitations caused by her seizures and not disabling pain. In any event, the ALJ's analysis of the objective medical evidence and Plaintiff's activities of daily living satisfies the test in *Duncan v. Secretary of Health and Human Servs.,* 801 F.2d 847, 853 (6th Cir. 1986), that Plaintiff is relying on.

13

testimony: 1) the statements were uncorroborated; 2) the objective medical evidence on the record did not substantiate the testimony regarding the frequency of the seizures; 3) the statements were from 2009; and 4) the statements were inconsistent with Plaintiff's achievements. (Tr. 16.)

The ALJ specifically pointed out that the medical evidence through June of 2006 illustrated that Plaintiff was following her treating physicians' prescribed treatment, and she was not having seizures with the frequency claimed by herself or her family members. (Tr. 16.)

The ALJ also pointed out that Plaintiff had not submitted any medical records beyond June of 2006 to corroborate her family's testimony despite the fact that he deliberately left the record open after the hearing specifically for just such evidence. (Tr. 16.)

Lastly, the ALJ noted that Plaintiff graduated high school, and is progressing towards a degree in graphic arts – while living on campus with roommates. (Tr. 17.)

In sum, the ALJ essentially found the testimony of Plaintiff and her family regarding the frequency of her seizures to be unsubstantiated. *Stanley*, 823 F.2d at 927-8. Therefore, he did not include this testimony in his hypothetical to the VE. Such a decision is supported by the case law. *Varley*, 820 F.2d at 779; *Webb*, 368 F.3d at 632; *Stanley*, 823 F.2d at 927-8. He asked the VE to testify about the number of jobs in the national economy wherein the Plaintiff could perform work at the light exertional level, and that did not expose her to hazards, including heights, dangerous machinery, or driving. The light exertional level takes into account Plaintiff's "issues with auras," and respects the fact that Plaintiff has been able to go to school and work towards obtaining a degree despite her seizures. (Tr. 18.) In addition, the restrictions on hazards take into account Plaintiff's medically supported seizure activity. (Tr. 16-18.) Consequently, the VE's testimony that Plaintiff could perform work as a housekeeper, cashier, or clerk is supported by substantial evidence. *Varley*,

14

820 F.2d at 779; *Webb*, 368 F.3d at 632; *Stanley*, 823 F.2d at 927-8. Moreover, the VE testified that these jobs could accommodate the need to take breaks if such a need occurred due to Plaintiff's impairments. (Tr. 20.) Consequently, the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence.

**G. Conclusion**

For the forgoing reasons, the Court finds that the Commissioner's determination that Plaintiff is not disabled is supported by substantial evidence. Accordingly, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

**III. FILING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. A copy of any objections is to be served upon this magistrate judge. E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due

within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

Date:   April 20, 2011	s/Laurie J. Michelson
	Laurie J. Michelson
	United States Magistrate Judge

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on April 20, 2011.

	s/Jane Johnson
	Case Manager to
	Magistrate Judge Laurie J. Michelson